## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### PINE BLUFF DIVISION

JOSEPH O'NEAL,
ADC #80529                                                               PLAINTIFF

V.                          CASE NO. 5:16-CV-00255 JM/BD

STEVEN STRINGFELLOW                                          DEFENDANT

### RECOMMENDED DISPOSITION

### I.    Procedures for Filing Objections

This Recommended Disposition ("Recommendation") has been sent to Judge

James M. Moody Jr. Any party may file written objections to this Recommendation.

Objections must be specific and must include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within

fourteen (14) days of this Recommendation.

If no objections are filed, Judge Moody can adopt this Recommendation without

independently reviewing the record. By not objecting, parties may also waive any right to

appeal questions of fact.

### II.    Background

Joseph O'Neal, an Arkansas Department of Correction ("ADC") inmate, filed this

lawsuit without the help of a lawyer under 42 U.S.C. § 1983. (Docket entry #2) Mr.

O'Neal claims that Defendant Stringfellow acted with deliberate indifference to his

dental needs by extracting the wrong tooth on March 7, 2016.

Defendant Stringfellow has moved for summary judgment on Mr. O'Neal's claims. (#28) Mr. O'Neal has responded to Defendant Stringfellow's motion and has also moved for summary judgment. (#32, #33, #34)  Defendant Stringfellow has responded to Mr. O'Neal's motion for summary judgment. (#37)

## III.   Discussion

### A.     Standard

Summary judgment is appropriate only when the evidence shows that there is no real dispute about any fact that is important to the outcome of the case. FED.R.CIV.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246, 106 S.Ct. 2505 (1986). The moving parties bear the burden of producing admissible evidence showing that there is no real dispute.

### B.     Factual History

Although the parties dispute some facts, the material facts are not in dispute. According to Mr. O'Neal's medical records, on February 29, 2016, Defendant Steven Stringfellow, a licensed dentist, examined him and noted that "tooth/teeth are mobile and need to be removed." (#29-1 at p.10) Defendant Stringfellow noted that teeth numbers nine and ten needed to be extracted. (*Id.*)

On March 7, 2016, Defendant Stringfellow again examined Mr. O'Neal and noted that teeth numbers eight and nine had class three mobility. (*Id.* at p.10) Defendant Stringfellow also noted that Mr. O'Neal had periodontal disease type three to four and that he needed additional extractions, an upper complete denture, and a lower partial denture. (*Id.* at pp.3, 10) Defendant Stringfellow testified that he discussed the "plan of

2

care" with Mr. O'Neal and believed that Mr. O'Neal understood and consented to the plan. (#29-3 at p.1) On the same date, Defendant Stringfellow extracted teeth numbers eight and nine.  (#29-1 at pp.3-4; #29-3 at p.1)

In his deposition, Mr. O'Neal testified that, on March 7, 2016, he believed that Defendant Stringfellow was only going to extract the two teeth that were causing pain. (#29-2 at p.24) Mr. O'Neal agreed that, on March 7, 2016, Defendant Stringfellow extracted one tooth that was causing pain, but not the other. (*Id*. at p.30) He stated that when he returned to see Defendant Stringfellow later in March, he told Defendant Stringfellow that he had extracted the wrong tooth.

According to Mr. O'Neal's medical records, at the March 14, 2016 encounter, Defendant Stringfellow told Mr. O'Neal that teeth numbers seven and ten had slightly sharp edges. (#29-1 at p.9) Defendant O'Neal explained that healthy teeth with sharp edges are not typically extracted. (*Id*.)

On March 28, 2016, Defendant Stringfellow again examined Mr. O'Neal. (*Id*.) After Defendant Stringfellow smoothed tooth number seven, he told Mr. O'Neal that the mobility of that tooth was slightly improved, but that it had a poor prognosis. (*Id*.; #29-2 at p.45)

In May 2016, Defendant Stringfellow again examined Mr. O'Neal and told him that, because he did not have enough teeth on the right side, Mr. O'Neal would have to be fitted for a complete, upper denture, rather than a partial denture. (#29-2 at pp.53-54) Mr. O'Neal agreed to that plan and to the removal of the remaining teeth on the right side.

(*Id.* at p.54) On June 6, 2016, Defendant Stringfellow extracted tooth number 10, and on July 11, 2016, extracted tooth number seven. (#29-1 at pp.6, 8)

Since March 7, 2016, Mr. O'Neal's dental providers have extracted all of his upper teeth. (*Id.* at pp.5-9) Once Mr. O'Neal's gums have recovered, he will be fitted with a complete upper denture. (#29-2 at p.20)

C.      Analysis

A state official can be held liable for an eighth amendment violation if he "knows of and disregards a serious medical need or a substantial risk to an inmate's health or safety." *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 528 (8th Cir. 2009). To prevail in a deliberate indifference claim, Mr. O'Neal must allege and prove "that he suffered from an objectively serious medical need" and "that [Defendant Stringfellow] actually knew of but deliberately disregarded his serious medical need." *Scott v. Benson*, 742 F.3d 335, 340 (8th Cir. 2014). A medical condition is "objectively serious" if the prisoner was diagnosed by a doctor or the need for care is so obvious that a lay person would recognize the medical need. *Id.*

Here, there is no dispute that Mr. O'Neal suffered from a serious medical need. Defendant Stringfellow examined him and determined that many of his teeth needed to be extracted. The question is whether Defendant Stringfellow had a sufficiently culpable state of mind when he removed two of Mr. O'Neal's teeth on March 7, 2016.

The subjective element of deliberate indifference is a high standard that requires a mental state of "more . . . than gross negligence." *Fourte v. Faulkner Cty.*, Ark., 746 F.3d 384, 387 (8th Cir. 2014) (quoting *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)).

In fact, it "requires a mental state 'akin to criminal recklessness.'" *Jackson v. Buckman*, 756 F.3d 1060, 1065 (8th Cir. 2014) (quoting *Scott*, 742 F.3d at 340). Stated another way, Mr. O'Neal must show that Defendant Stringfellow's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Dulany v. Carnahan*, 132 F.3d 1234, 1240–41 (8th Cir. 1997).

In support of his motion, Defendant Stringfellow provides the sworn testimony of Martin Zoldessy, Doctor of Dental Surgery. (#29-4) Dr. Zoldessy testified that "the dental treatment provided to Mr. O'Neal by Dr. Stringfellow was appropriate and satisfactory for Mr. O'Neal's complaints during the relevant period of time." (#29-4 at p.2) Dr. Zoldessy explained that, "Mr. O'Neal had serious periodontal disease which was exacerbated by the fact that he had poor home care and only had one dental cleaning in the past eight years." (*Id*.)

In his response to Defendant Stringfellow's motion, Mr. O'Neal argues that the removal of the wrong tooth by Defendant Stringfellow on March 7, 2016, led to the periodontal infection that he suffered and the extraction of his remaining teeth. In addition, Mr. O'Neal states that Defendant Stringfellow left a bone fragment in his mouth "intentionally to set up an infection so Defendant could carry out his desire to extract all of [his] teeth and fit him with dentures." (#33 at p.8)

Mr. O'Neal has not come forward with any evidence to support his belief that Dr. Stringfellow's treatment was intentionally inappropriate. Likewise, he has offered no evidence to contradict medical evidence provided by Defendant Stringfellow and Dr. Zoldessy. In fact, Mr. O'Neal's medical records show that, at his March 7, 2016

appointment, Defendant Stringfellow determined that Mr. O'Neal was already suffering from periodontal disease and that an upper, complete denture would be necessary. (#29-1 at p.3)

Based on Mr. O'Neal's medical records, as well as Dr. Zoldessy's undisputed testimony, the Court cannot conclude that Defendant Stringfellow's conduct "evidence[d] essential maltreatment." Even if Mr. O'Neal had come forward with evidence that Defendant Stringfellow had acted negligently, that conduct would still be insufficient to support a constitutional claim. Based on the undisputed facts, Defendant Stringfellow is entitled to judgment as a matter of law.

## IV.   Conclusion

The Court recommends that Defendant Stringfellow's motion for summary judgment (#28) be GRANTED and Mr. O'Neal's motion for summary judgment (#33) should be DENIED. Mr. O'Neal's claims should be DISMISSED, with prejudice.

DATED this 29th day of June, 2017.

_____
UNITED STATES MAGISTRATE JUDGE

6